# VANANTWERP, MONGE, JONES, EDWARDS & MCCANN, LLP
### ATTORNEYS AT LAW

1544 WINCHESTER AVENUE, FIFTH FLOOR
ASHLAND, KENTUCKY 41101

Telephone (606) 329-2929
Telefax (606) 329-0490

POST OFFICE BOX 1111
ASHLAND, KENTUCKY 41105-1111

GREGORY L. MONGE **
WILLIAM H. JONES, JR.
CARL D. EDWARDS, JR.*
KIMBERLY S. MCCANN*
W. MITCHELL HALL, JR.*
LEIGH GROSS LATHEROW*♦
SEAN M. WHITT
CHRISTINA D. HAJJAR
PHILLIP G. LEWIS
LANCE E. MCCOMIS
WILLIAM F. BOTTOMS

Frankfort Office:
**609 CHAMBERLIN AVENUE**
**FRANKFORT, KENTUCKY 40601**
**(800) 598-8653**

HOWARD VANANTWERP, JR. (1898-1992)
HOWARD VANANTWERP, III (1927-2011)

* ALSO ADMITTED IN OHIO
** ALSO ADMITTED IN ILLINOIS
♦ ALSO ADMITTED IN WEST VIRGINIA

March 4, 2014

*Via Facsimile and Regular Mail*
Mr. Lyle S. Hanna
Registered Agent
Manager
Hanna Resource Group, LLC
6398 Old Richmond Group
Lexington, Kentucky 40515

    Re:    *Deborah Fitzpatrick v. Paintsville Investors, LLC d/b/a Mountain Manor of Paintsville*, Johnson Circuit Court, Civil Action No. 14-CI-00072

Dear Mr. Hanna:

    Please be advised that I represent Debbie Fitzpatrick, a former Mountain Manor of Paintsville ("Mountain Manor") employee, in connection with a lawsuit filed by Ms. Fitzpatrick against Mountain Manor related to her termination of employment. I am writing to request that Hanna Resource Group, LLC preserve evidence in any way related to Ms. Fitzpatrick's employment with and separation of employment from Mountain Manor.

    This preservation request includes maintaining, preserving and protecting any documents, electronically stored information, software and things that are known, or reasonably should be known, to be relevant to Ms. Fitzpatrick's employment, her FMLA leave and her separation of employment that may lead to the discovery of admissible evidence in connection with the above-referenced lawsuit. This request extends to any electronic, documentary or other information stored in any areas under Hanna Resource Group's control and/or on any computer disks, hard drives, servers, telephones, and/or any other electronic storage devices that are accessible to Hanna Resource Group. This would include all data, communications, messages, and other information stored on any computers or telephones used by Hanna Resources Group related to Ms. Fitzpatrick's FMLA leave, separation of employment and any matter alleged in her Complaint, a copy of which has been attached.

{00374735-1 }

Mr. Lyle S. Hanna
March 4, 2014
Page 2

On behalf of Ms. Fitzpatrick, I request that Hanna Resource Group suspend immediately any software application, process, practice or procedure that might destroy, purge, erase, delete or alter any document, information or other evidence, including that which is stored electronically, that is or may be related in any way to Ms. Fitzpatrick's employment and termination from Mountain Manor. This includes, but is not limited to, any routine process, practice or procedure that might lead to the destruction of such electronic, documentary, or other information and/or the deletion, overwriting (automatic or otherwise), reformatting or purging of information stored in electronic formats, such as computer disks, hard drives, servers, telephones, backup tapes and any other electronic storage devices.

To the extent that Hanna Resource Group was acting in concert with, as an agent of, or on behalf of Mountain Resources in the provision of human resources services related to Ms. Fizpatrick, there may be a legal obligation to preserve this evidence. Notice has been provided to Mountain Manor regarding its preservation obligation.

Very truly yours,

Leigh Gross Latherow

Enclosure

cc:   Deborah S. Fitzpatrick

{00374735-1}

COMMONWEALTH OF KENTUCKY
JOHNSON CIRCUIT COURT
CASE NO. 14-CI-00072

DEBORAH S. FITZPATRICK,            PLAINTIFF,

vs.

PAINTSVILLE INVESTORS, LLC
d/b/a MOUNTAIN MANOR OF PAINTSVILLE,     DEFENDANT.

FILED
PENNY ADAMS
FEB 25 2014
JOHNSON CIRCUIT COURT CLERK
BY: _____ D.C.

Serve by Certified Mail:
    Franklin Fitzpatrick
    Registered Agent
    197 South Lake Drive
    Suite 103
    Prestonsburg, KY 41653

**JURY TRIAL DEMANDED**

## VERIFIED COMPLAINT

Comes now the Plaintiff Deborah Fitzpatrick ("Plaintiff"), by and through the undersigned counsel, and for her Verified Complaint against the Defendant Paintsville Investors, LLC d/b/a Mountain Manor of Paintsville ('Mountain Manor"), states as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff is a Kentucky citizen and resident of Paintsville, Kentucky.

2. Defendant Paintsville Investors, LLC is a Kentucky limited liability company whose members are residents and citizens of Kentucky. The principal place of business of Paintsville Investors, LLC is 1025 Euclid Avenue, US 40, Paintsville, Kentucky 41240.

3. Defendant Paintsville Investors, LLC operates under an assumed name of Mountain Manor of Paintsville whose principal place of business is 1025 Euclid Avenue, US 40, Paintsville, Kentucky 41240.

4. The events giving rise to this action occurred in Paintsville, Johnson County, Kentucky.

5. The amount in controversy exceeds the jurisdictional requirements of this Court.

6. Mountain Manor is a long-term care facility licensed under the statutes and regulations of the Commonwealth of Kentucky.

7. During the times relevant to this action, Mountain Manor operated as a long-term care facility licensed for reimbursements through Medicaid and Medicare and received such reimbursements.

8. In October and November 2013 and the preceding 12 months, Mountain Manor was an "Employer" as that term is defined in the Family and Medical Leave Act ("FMLA") under 29 U.S.C. § 2611(4). Mountain Manor employed 50 or more employees for each working day for the year of and year preceding the events giving rise to this action.

9. This action arises from Plaintiff's employment at Mountain Manor located in Paintsville, Kentucky and Mountain Manor's violation of the Plaintiff's common law rights arising under the laws of the Commonwealth of Kentucky and under the FMLA, 29 U.S.C. 2601, et seq.

## FACTUAL BACKGROUND

10. Plaintiff was employed by Mountain Manor as its licensed nursing home administrator from April 1998 to November 20, 2013 when she was wrongfully terminated from her employment.

11. As a nursing home facility operating in the Commonwealth of Kentucky and one seeking Medicaid and Medicare reimbursements, Mountain Manor is required to have a licensed nursing home administrator.

12. During her employment with Mountain Manor, Plaintiff had conflicts with Franklin Fitzpatrick, one of the owners (*i.e.* members) of Mountain Manor in which Franklin Fitzpatrick asked Plaintiff, as the nursing home administrator for Mountain Manor, to engage in unlawful activities regarding employee benefits and patient rights.

13. On more than one occasion, including in 2013, Plaintiff refused to comply with Franklin Fitzpatrick's instructions to violate certain statutes and regulations regarding employee benefits and patient rights. Plaintiff complained to Mountain Manor's human resources agent Linda Haft on several occasions regarding Franklin Fitzpatrick's requests for her to violate these statutes and regulations.

14. On or about October 4, 2013, Plaintiff notified Mountain Manor that her son had been involved in an incident involving the death of another person, that Plaintiff was suffering from a serious health condition as a result of the situation and that she needed to take time off work to seek medical care for herself and to try to assist her son relating to the incident. Over the next two days, Plaintiff was told by Mountain Manor owners (*i.e.* members) Franklin Fitzpatrick and Patricia Akers that she could take off from work the time she needed to recover and that she could return to work when she was ready.

15. Shortly thereafter Linda Haft, agent for Mountain Manor, sent Plaintiff an email expressing her condolences for the incident with Plaintiff's son. When Plaintiff called Linda Haft, Linda Haft stated that she would make arrangements to place Plaintiff on

FMLA leave and obtain a loan from Plaintiff's 401(k) retirement plan at Mountain Manor to help pay for Plaintiff's son's attorney fees.

16. When Plaintiff advised Linda Haft during that conversation that it was not possible to obtain a loan under the current retirement plan, Linda Haft stated "we need to get that changed."

17. Plaintiff provided Mountain Manor with FMLA paperwork on or about October 7, 2013.

18. Over the next weeks, Plaintiff was in communication with Retirement Management Services ("RMS"), the company that services Mountain Manor's retirement plan, regarding changing the plan to allow taking a loan against her retirement funds for the payment of her son's attorney's fees. Larry Smith from Retirement Management Services advised Plaintiff that he told Linda Haft that it would cost Mountain Manor $150 to change the retirement plan to allow taking a loan from the plan.

19. Plaintiff called Linda Haft a number of times inquiring about Mountain Manor's change to the retirement plan. Upon each inquiry, Linda Haft told Plaintiff that she was waiting for approval from the Mountain Manor owners to proceed with the change.

20. Throughout her FMLA leave, Plaintiff and her physician were in communication with Mountain Manor regarding Plaintiff's health condition and her return to work date.

21. On or about November 7, Mountain Manor was advised that the Plaintiff was being released and would be returning to work on November 21, 2013.

22. On or about November 20, 2013, Linda Haft advised Plaintiff that a replacement nursing home administrator had been hired for her and that she would not be permitted to return to work.

23. During this same conversation with Linda Haft on or about November 20, 2013, Plaintiff asked Linda Haft why her position had not been held for her as promised and as required by the FMLA. Linda Haft advised Plaintiff that Mountain Manor considered Plaintiff to be a "key employee" under the FMLA and, therefore, Mountain Manor did not have to restore Plaintiff to her employment at the conclusion of her FMLA leave

24. At no time prior to November 20, 2013 had Plaintiff been notified, advised or told that she was a "key employee" of Mountain Manor and that she was not entitled to reinstatement of her position as nursing home administrator at Mountain Manor upon her return from FMLA leave. Plaintiff was never told that she did not qualify for FMLA leave.

25. On November 20, 2013, Plaintiff asked Linda Haft why she was not being allowed to return to her position and Linda Haft responded that it was because Plaintiff had "butted heads" too many times with Franklin Fitzpatrick, one of the owners and principals of Mountain Manor.

## COUNT I – FMLA

26. Plaintiff incorporates each and every other Paragraph in the Complaint within Count I.

27. During the relevant time period in this action, including from October 4, 2013 through November 20, 2014, Plaintiff was an Eligible Employee as that term is defined in the FMLA under 29 U.S.C. 21611(2) and Plaintiff was entitled to take FMLA leave during all times relevant to this Complaint, including in October and November 2013, with the right of reinstatement to her employment at Mountain Manor.

28. During October and November 2013, Plaintiff had a serious health condition as that term is defined under 29 U.S.C. § 2611(11). Plaintiff provided documentation required by Mountain Manor to receive FMLA leave and was never advised that her FMLA leave was not approved or that she was considered to be a "key employee," until she sought reinstatement.

29. After Mountain Manor was notified of Plaintiff's need and request for FMLA, Mountain Manor failed to provide her with required notices under the FMLA, including Notice of Eligibility and Rights under the FMLA, Designation Notice of FMLA Leave, and status as a "key employee" under FMLA.

30. Plaintiff was verbally approved the right to take FMLA leave and was told to take leave for as long as she needed.

31. Mountain Manor interfered with Plaintiff's FMLA rights by failing to provide her with required notices.

32. Plaintiff was entitled to be restored to her former position as nursing home administrator upon her return to work after taking FMLA leave.

33. Mountain Manor interfered with Plaintiff's FMLA rights by refusing to return her to her position at the conclusion of her FMLA leave.

34. Mountain Manor has denied FMLA benefits and protection to which Plaintiff was entitled.

35. Plaintiff has been damaged by Mountain Manor's interference with her FMLA rights, including the loss of wages, salary, compensation and employee benefits, and is entitled to recover such losses.

36. Mountain Manor's violation of the FMLA was not in good faith and its actions were not predicated upon reasonable grounds.

37. Plaintiff is entitled to recovery of liquidated damages and attorneys fees based upon Mountain Manor's interference of her FMLA rights and its violation of the FMLA.

38. Plaintiff is entitled to equitable relief in the form of front pay, in an amount to be determined by the jury based upon Mountain Manor's interference of her FMLA rights and its violation of the FMLA.

## COUNT II – PROMISSORY ESTOPPEL

39. Plaintiff incorporates each and every other Paragraph in the Complaint within Count II.

40. Plaintiff relied upon the promises of Mountain Manor that she could take time off from work to recover and return to her position as nursing home administrator when she was ready.

41. At no time while Plaintiff was off work did Mountain Manor or any of its agents advise Plaintiff that she would not be permitted to return to work as nursing home administrator at Mountain Manor.

42. At no time while Plaintiff was off work did Mountain Manor or any of its agents advise Plaintiff that Mountain Manor was searching for a replacement nursing home administrator for her.

43. When Plaintiff questioned Linda Haft why she was not being allowed to return to work, Linda Haft stated that Plaintiff and owner Frank Fitzpatrick had "butted heads too many times."

44. Mountain Manor breached its promise to Plaintiff that it would hold open her position of employment during her leave and that she could return to work as nursing home administrator at the conclusion of her leave.

45. Plaintiff has been injured and sustained damages as a result of this breach, including, but not limited to, emotional distress, the loss of her employment and all the benefits she received from her employment.

46. Mountain Manor's breach of its promise regarding allowing Plaintiff to return to work was intentional, reckless, willful and wanton.

47. As a result of Mountain Manor's breach of its promises, Plaintiff is entitled to recover all damages sustained by her, including lost compensation and employee benefits, emotional distress damages, and equitable relief in the form of front pay for her lost wages and benefits up to her date of retirement.

48. Mountain Manor's actions were intentional, willful, wanton and reckless, or undertaken with gross negligence entitling Plaintiff to recover punitive damages.

## COUNT III – WRONGFUL TERMINATION

49. Plaintiff incorporates each and every other paragraph within Count II of the Complaint.

50. In approximately October 2012, a substantial fine in the amount of approximately $50,000.00 was assessed against Mountain Manor by Center for Medicaid and Medicare Services ("CMS"). During a meeting when the profit and loss statements that accounted for this significant fine were being reviewed, Franklin Fitzpatrick stated that Mountain Manor needed to develop a means to recoup this fine and other similar fines in the future from the responsible employee's retirement account. Plaintiff advised Franklin Fitzpatrick that use of an employee's retirement funds to recoup fines levied against Mountain Manor would be unlawful and that the company could not act in the manner that he was requesting.

51. On numerous occasions, Franklin Fitzpatrick instructed Plaintiff to use coercive and unlawful means against a Mountain Manor patient to force the patient to stop smoking.

52. Use of the coercive means instructed by Franklin Fitzpatrick would have resulted in a statutory violation, specifically a violation of 42 CFR 483.10 and 483.15, and jeopardized Mountain Manor's Medicaid and Medicare eligibility.

53. Plaintiff refused to violate the regulations and patient rights as instructed by Franklin Fitzpatrick.

54. Plaintiff reported to Linda Haft the incident regarding Franklin Fitzpatrick's directives to find a way to use an employee's retirement plan to pay fines imposed against Mountain Manor and regarding use of coercive tactics against a resident to force the resident to stop smoking.

55. Plaintiff's refusal to violate the statutes providing employee benefit protections and patient right protections was a substantial and motivating factor in Plaintiff's termination.

56. Mountain Manor's termination of Plaintiff based upon her refusal to violate these statutes is against the public policy of the Commonwealth of Kentucky and constitutes wrongful termination.

57. Mountain Manor's termination of Plaintiff was intentional, willful, wanton and reckless or undertaken with gross negligence entitling Plaintiff to recover punitive damages.

58. Plaintiff has suffered emotional distress as a result of her wrongful termination and has incurred lost compensation and employee benefits.

59. Plaintiff is entitled to recovery of compensatory and punitive damages as a result of Mountain Manor's unlawful actions.

WHEREFORE, Plaintiff prays for Judgment entered against Defendant in her favor and the following:

1. Trial by jury;

2. Award of damages to compensate Plaintiff for her losses and injuries, including lost wages, compensation and employee benefits;

3. Award of damages to compensate Plaintiff for her emotional distress and humiliation;

4. Attorneys fees;

5. Equitable Relief in the form of front pay and liquidated damages; and

6. Punitive damages.

Respectfully submitted,

VANANTWERP, MONGE, JONES,
EDWARDS & McCANN, LLP

Leigh Gross Latherow
1544 Winchester Ave., 5th Floor
P.O. Box 1111
Ashland, Kentucky 41105-1111
(606) 329-2929
(606) 329-0490 facsimile
llatherow@vmjc.com
*Attorney for Plaintiff*

## VERIFICATION

I, Deborah S. Fitzpatrick, being duly sworn, do hereby verify and affirm that the foregoing statements of fact within the attached Verified Complain are true and accurate to the best of my knowledge.

*[signature]*
DEBORAH S. FITZPATRICK

STATE OF Indiana

COUNTY OF Kosciusko

Subscribed and sworn to before me by Deborah S. Fitzpatrick, this 11 day of February, 2014.

My commission expires: March 24, 2016

*[signature]*
NOTARY PUBLIC  William A. Curl

*[Notary seal:]*
William A. Curl
Kosciusko County
My Commission Expires
March 24, 2016

{00369180-3} 8